IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VICTORIA CARDONA,

    Plaintiff,

  v.                                                            Case No. 2:25-cv-00438 KWR/GJF

ENMUR, and CARLOS MARRUJO,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

**THIS MATTER** comes before the Court upon Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 24). Victoria Cardona ("Plaintiff") brings this employment action against Eastern New Mexico University-Roswell ("ENMUR") and Carlos Marrujo (collectively, "Defendants"). **Doc. 21**. Plaintiff, a former custodian at ENMUR, brings claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Family and Medical Leave Act ("FMLA"), the New Mexico Whistleblower Protection Act ("NMWPA"), and the promissory estoppel doctrine. **Doc. 21 ¶¶ 40–45**. Defendants move to dismiss each claim. **Doc. 24 at 3–6**. Contrary to Defendant's argument, Plaintiff need not allege administrative exhaustion at this stage, and thus, the Court declines to dismiss her Title VII claims. Since Plaintiff sufficiently alleges that she was terminated very close in time to her FMLA leave, the Court declines to dismiss her FMLA claim. Because Plaintiff fails to allege that she engaged in a protected disclosure under the NMWPA or that she relied on a written promise by Defendants, the Court dismisses her NMWPA and promissory estoppel claims. Having reviewed the parties' pleadings, exhibits, and the relevant

law, the Court finds that the motion is well-taken in part, and therefore, is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

On March 31, 2025, Plaintiff filed suit in New Mexico state court alleging discrimination, hostile work environment, retaliation, defamation, and slander causes of action against Defendants. **Doc. 1-1 at 1–4**. On May 8, 2025, Defendants removed the action. **Doc. 1**. On June 2, 2025, Plaintiff amended her complaint as a matter of course. **Doc. 10**. Plaintiff filed a Second Amended Complaint ("SAC") (**Doc. 21**), and the Court accepted the SAC as the operative complaint. **Doc. 22 at 1**.

Plaintiff makes the following allegations in her SAC. Plaintiff was employed by ENMUR, a public institution, as a custodian from September 26, 2021, until October 22, 2024. **Doc. 21 ¶¶ 3–4**. Plaintiff was the only Caucasian custodian in her immediate work environment and experienced exclusion. *Id.* **¶¶ 6, 8, 30, 35**. On July 23, 2023, Plaintiff told Roberto, her colleague, "callate por favor" after he disrupted a meeting. *Id.* **¶ 11**. On August 1, 2023, Plaintiff had a private discussion about Title VII concerns with her colleague, Eva. *Id.* **¶ 12**. On August 3, 2023, Plaintiff was placed on administrative leave due to grievances filed by Roberto and Eva. *Id.* **¶ 10**. Defendants "issued Plaintiff termination papers based on inaccurate reports" that suggested she was physically aggressive. *Id.* **¶ 14**. At an unspecified point, Plaintiff was offered a severance agreement and terminated. *Id.* **¶ 16**. Defendants later reinstated Plaintiff and imposed four write-ups. *Id.* **¶ 19**.

While Plaintiff was on administrative leave, human resources and state police began investigating time fraud by the custodial staff. *Id.* **¶¶ 15, 21–22**. Plaintiff alleges that she reported time fraud and misconduct, *id.* **¶¶ 40, 44**, and that she "was told she was protected under the

Whistleblower Act," *id.* ¶ **18**. HR investigator Casarez told Plaintiff that other custodians had been caught leaving early. *Id.* ¶ **17**. Defendants "promised Plaintiff job security and protection under internal policies and whistleblower laws." *Id.* ¶ **45**.

In March 2024, Plaintiff applied for FMLA leave. *Id.* ¶ **23**. Plaintiff was written up for misconduct on September 23, 2024.[1] *Id.* ¶ **25**. Plaintiff's "FMLA protection" expired on September 26, 2024. *Id.* ¶ **27**. Defendants terminated Plaintiff on October 22, 2024, for her misconduct on September 23, 2024. *Id.* Plaintiff appealed the termination, and she was rehired in January 2025. Since her rehiring, Plaintiff has experienced exclusion, discomfort, and has been called in for "time clock issues." *Id.* ¶¶ **30–39**.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits a court to dismiss a complaint that fails to state a claim upon which relief can be granted. A complaint must have sufficient factual matter that, if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if a plaintiff pleads factual content that allows a court to reasonably infer that the defendant is liable for the misconduct alleged. *Id.* A court must view well-pleaded factual allegations in the light most favorable to the nonmoving party. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014).

In ruling on a motion to dismiss, a court should disregard conclusory statements of law and consider whether the factual allegations plausibly suggest the defendant is liable. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). In addition to the complaint, a court may consider attached exhibits and documents incorporated into the complaint by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). While a court must draw all

---

[1] Plaintiff does not allege when she returned to work.

reasonable inferences in favor of the nonmoving party, *see Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007), mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Court notes that Plaintiff brings this action *pro se*. Thus, Plaintiff's pleadings will be construed liberally and held to a less stringent standard than pleadings drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may overlook a *pro se* plaintiff's "failure to cite proper legal authority," "confusion of various legal theories," "poor syntax and sentence construction," and "unfamiliarity with pleading requirements." *Id.* But a court may not make a *pro se* plaintiff's arguments for her, *id.*, "supply additional facts[, or] construct a legal theory for [the] plaintiff that assumes facts that have not been pleaded," *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989). When deficiencies in a complaint stem from a "*pro se* litigant's ignorance of special pleading requirements," leave to amend should be freely given. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990).

## DISCUSSION

Defendants move to dismiss Plaintiff's Title VII, FMLA, NMWPA, and promissory estoppel claims. **Doc. 24 at 3–6**. The Court address each claim in turn.

I. **The Court declines to dismiss Plaintiff's Title VII claims.**

In moving to dismiss Plaintiff's Title VII claims, Defendants argue that Plaintiff failed to allege that she exhausted her administrative remedies prior to bringing her Title VII claims. **Doc. 24 at 3–4**. While Plaintiff contends that she filed a formal charge of discrimination and received notice of her right to sue, she fails to sufficiently allege that those events occurred. **Doc. 27 at 1**. In light of *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181–86 (10th Cir. 2018), which

4

recharacterized the failure to exhaust as an affirmative defense, the Court declines to dismiss Plaintiff's Title VII claims at this stage.

Title VII prohibits employment discrimination based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Before bringing a Title VII claim, a plaintiff must file a charge of discrimination with an authorized state agency, local agency, or the EEOC, and receive a notice of her right to sue. *Brown v. Keystone Learning Servs.*, 804 F. App'x 873, 882 (10th Cir. 2020). A plaintiff's failure to exhaust her administrative remedies is an affirmative defense, not a jurisdictional bar. *See Lincoln*, 900 F.3d at 1181–86. While the failure to exhaust is an affirmative defense, the defense may be raised on a motion to dismiss "when grounds for the defense appear on the face of the complaint." *Cirocco v. McMahon*, 768 F. App'x 854, 858 (10th Cir. 2019) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

Generally, the plaintiff's federal court claim is limited by "the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Alabi v. Vilsack*, 860 F. App'x 576, 579 (10th Cir. 2021) (quoting *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007)). The charge of discrimination must contain "facts concerning the discriminatory and retaliatory actions underlying each claim . . . [and] each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Id.* The primary inquiry is whether conduct alleged in the lawsuit falls "within the scope of an EEOC investigation which would reasonably grow out of the charges actually made [in the EEOC charge]." *Id.* (quoting *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018)).

Here, on July 1, 2025, Plaintiff filed her SAC (**Doc. 21**), which is now the controlling, operative complaint. In the SAC, Plaintiff does not allege any facts demonstrating that she filed a

5

charge of discrimination with the EEOC or received notice of her right to sue. Further, Plaintiff does not attach any exhibits to her SAC demonstrating that she filed a charge or received notice of her right to sue.[2] Plaintiff argues in her response that she received notice of her right to sue, but she neither alleges nor attaches an exhibit demonstrating that she filed a charge of discrimination or receive notice of her right to sue. After *Lincoln*, 900 F.3d 1166, courts consider the failure-to-exhaust defense at the motion to dismiss stage if grounds for the defense appear on the face of the complaint. *See Cirocco*, 768 F. App'x at 858. Plaintiff filed her SAC well after October 22, 2024, the date she alleges that she was terminated. Thus, the Court cannot assume, based on the face of the SAC, that Plaintiff could not have exhausted her administrative remedies before filing suit. *Cf. Henderson v. Dungarvin N.M., LLC*, Civ. No. 20-32 MV/JFR, 2021 WL 1169686, at *14 (D.N.M. Mar. 8, 2021) (finding it apparent that a plaintiff could not have exhausted his administrative remedies after filing suit only three weeks after termination). Accordingly, the Court declines to dismiss Plaintiff's Title VII claims, Counts I and II, at this stage.

## II.     Plaintiff sufficiently alleges an FMLA claim under the retaliation theory.

Defendants move to dismiss Plaintiff's FMLA claim and argue that she fails to state a claim under both the interference and retaliation FMLA theories. **Doc. 24 at 4**. Plaintiff responds by arguing that she was placed on leave and terminated when she returned from FMLA leave. **Doc. 27 at 1**. Since Plaintiff alleges sufficient facts in support of an FMLA claim based on retaliation, the Court declines to dismiss her FMLA claim at this stage.

---

[2] The Court notes that Plaintiff attached several exhibits to her First Amended Complaint (**Doc. 10**), including a notice of her right to sue. **Doc. 10, Ex. 1 at 12**. However, an amended complaint "supersedes an original complaint and renders the original complaint without legal effect." *Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007) (citation modified); *see also Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("[W]hen [plaintiff] filed the second amended complaint, the first amended complaint (and its attached exhibits) became a legal nullity.").

Under the FMLA, a qualified employee may take up to twelve weeks of leave during a twelve-month period if a "serious health condition" renders the employee unable to perform the functions of their position. *See* 29 U.S.C. § 2612(a)(1)(D). The Tenth Circuit has recognized two distinct theories of recovery under 29 U.S.C. § 2615: under § 2615(a)(1), an interference theory; and under § 2615(a)(2), a retaliation theory. *See Dalpiaz v. Carbon Cnty.*, 760 F.3d 1126, 1131 (10th Cir. 2014). Under the interference theory, an employer may not "interfere with, restrain, or deny the exercise or attempt to exercise any right provided under the FMLA." *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1226 (10th Cir. 2012) (citing 29 U.S.C. § 2615(a)(1)). Under the retaliation theory, an employer may not "discharge or in any other manner discriminate" against an employee for exercising her FMLA rights. *See Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002). The Court finds that Plaintiff fails to allege an interference claim but she sufficiently alleges a retaliation claim. The Court addresses each in turn.

### A.  **Plaintiff fails to allege an FMLA interference claim.**

Defendants argue that Plaintiff fails to allege that Defendants interfered with her FMLA rights. **Doc. 24 at 4**. The Court agrees because Plaintiff does not allege that ENMUR denied her application for leave, cut short her leave, or denied her reinstatement.

To establish an FMLA interference claim, a plaintiff must show the following: (1) she was entitled to FMLA leave, (2) an adverse action by her employer interfered with her right to take FMLA leave, and (3) the adverse action was related to the exercise or attempted exercise of her FMLA rights. *See DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 978 (10th Cir. 2017). An employer, regardless of their intent, violates the FMLA if they deprive an employee of any FMLA right. *ScriptPro*, 700 F.3d at 1226–27.

Here, Plaintiff does not allege facts sufficient to support an FMLA interference claim. Plaintiff alleges that she applied for FMLA leave in March 2024, **doc. 21 ¶ 23**, and she was ultimately terminated for conduct that occurred while she had three days left of "[h]er FMLA protection," *id.* **¶¶ 27, 43**. Construing these allegations liberally, the Court infers that Plaintiff gave adequate notice that she was entitled to FMLA leave since she applied for and was granted leave. *See Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 997 (10th Cir. 2001) ("The FMLA, however, does not require a covered employee to specifically ask for FMLA benefits. An employee need not expressly assert rights under the FMLA or even mention the FMLA."). However, Plaintiff must also demonstrate that she was prevented from taking her full twelve weeks of leave, denied reinstatement, or denied initial permission to take leave. *See Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007). Plaintiff alleges that her "FMLA protection" ended on September 26, 2024, and she was terminated on October 22, 2024, for misconduct occurring on September 23, 2024. **Doc. 21 ¶¶ 25–27, 43**. Plaintiff does not allege that she was denied her full FMLA leave. She does not allege she was denied reinstatement; rather, she appears to have been employed from the end of her FMLA leave until October 22, 2024. *Id.* **¶ 27**. She does not allege that ENMUR initially denied her permission to take FMLA leave. Thus, Plaintiff fails to sufficiently allege an FMLA interference claim upon which the Court can grant relief.

### B. Plaintiff sufficiently alleges an FMLA retaliation claim.

Defendants contend that Plaintiff fails to allege facts that support an FMLA retaliation claim. **Doc. 24 at 4**. Since Plaintiff alleges that she took FMLA leave and was terminated very closely after her leave, the Court disagrees and finds that Plaintiff sufficiently alleges an FMLA claim under the retaliation theory.

8

To establish an FMLA retaliation claim, Plaintiff must demonstrate that (1) she engaged in a protected activity, (2) Defendants took an action that a reasonable employee would have found materially adverse, and (3) a causal connection exists between the protected activity and the adverse action. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006).

Here, Plaintiff sufficiently alleges a claim for FMLA retaliation. Plaintiff alleges that she applied for FMLA leave in March 2024 and was still covered under FMLA leave in September 2024. **Doc. 21 ¶¶ 23, 27**. Thus, the Court reasonably infers that Plaintiff took FMLA leave, thereby engaging in a protected activity. *See Metzler*, 464 F.3d at 1171 (finding that a plaintiff "engaged in a protected activity by taking FMLA leave for a serious health condition and [her employer] was aware of such leave"). Plaintiff alleges that she was terminated for misconduct. **Doc. 21 ¶ 27**. A reasonable employee would find termination materially adverse. *See Metzler*, 464 F.3d at 1171 (noting that "any reasonable employee would have found termination materially adverse").

As to the third element, the critical inquiry is whether Plaintiff has demonstrated that her termination "occurred under circumstances which give rise to an inference of unlawful discrimination." *Id.* (quoting *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002)). If a plaintiff relies on temporal proximity alone to justify an inference of retaliatory motive, the termination must be "very closely connected in time to the protected activity." *Id.* (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)). Plaintiff alleges that she was terminated on October 22, 2024, and her FMLA leave expired on September 26, 2024. **Doc. 21 ¶ 27**. Thus, her termination was "very closely connected in time to the protected activity." *Id.* at 1171–72 (holding that termination about six weeks after an employer knew that a plaintiff intended to take FMLA leave and within four weeks of the plaintiff's request for leave was very closely connected in time to the protected activity). Thus, Plaintiff alleges facts that sufficiently

support an FMLA retaliation claim. Accordingly, the Court declines to dismiss Plaintiff's FMLA claim.

### III. Plaintiff fails to allege a claim under the New Mexico Whistle Blower Protection Act.

In support of dismissing Plaintiff's NMWPA claim, Defendants contend that Plaintiff's allegations in support of the claim are conclusory and fail to plausibly state an NMWPA claim. **Doc. 24 at 5; Doc. 28 at 2**. Plaintiff argues that timing and false documentation should support an inference of retaliation.[3] **Doc. 27 at 1–2**. Plaintiff fails to allege whom she reported fraud to and a sufficient causal connection, and thus, the Court agrees that Plaintiff fails to allege an NMWPA claim.

To state an NMWPA claim, a plaintiff must establish the following: (1) the employee engaged in a protected disclosure; (2) the employer took an adverse employment action against the employee; and (3) a causal connection exists between the protected disclosure and the adverse action. *See Walton v. N.M. State Land Office*, 113 F. Supp. 3d 1178, 1199 (D.N.M. 2015) (citing NMSA 1978, § 10-16C-3 (2010)).

**A. Plaintiff fails to allege that a protected disclosure occurred.**

Defendants argue that Plaintiff's NMWPA claim fails because it is "entirely unclear what [Plaintiff] reported and to whom." **Doc. 24 at 5**. Since Plaintiff does not allege whom she reported time fraud to, the Court agrees, in part.

Under the NMWPA, a protected disclosure occurs when a public employee:

---

[3] Plaintiff argues that *Wills v. Bd. Of Regents of Univ. of N.M.*, 2015-NMCA-105, 357 P.3d 453, supports an inference of retaliation. **Doc. 27 at 2**. In *Wills*, that court found that a plaintiff's theory, though not clearly articulated in the lower court, could be considered on appeal because it "may reasonably have been inferred from his complaint." *Id.* ¶ 16. Even considering *Wills*, the Court finds that an NMWPA claim cannot be inferred off the face of Plaintiff's SAC.

>   A. communicates to the public employer or a third party information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act;
>
>   B. provides information to, or testifies before, a public body as part of an investigation, hearing or inquiry into an unlawful or improper act; or
>
>   C. objects to or refuses to participate in an activity, policy or practice that constitutes an unlawful or improper act.

Section 10-16C-3.

Here, Plaintiff clearly alleges that she reported time fraud and misconduct. **Doc. 21 ¶¶ 40, 44**. However, Plaintiff does not allege if she reported time fraud to her public employer or a third party as the text requires. Rather, Plaintiff alleges that the following occurred: (1) HR investigator Casarez "informed her" that time fraud had been committed, *id.* ¶ 17; (2) she "was told she was protected under the Whistleblower Act," *id.* ¶ 18; (3) "HR began interviewing staff about time fraud," *id.* ¶ 21; and (4) "Plaintiff reported time fraud and misconduct. Defendants retaliated by disciplining and terminating her," *id.* ¶ 44. Plaintiff's allegation that she "reported time fraud" fails to address whether she reported it to her employer or a third party. While the Court liberally construes Plaintiff's pleadings, the Court cannot "supply additional facts" that Plaintiff has not pled. *Dunn*, 880 F.2d at 1197. Accordingly, the Court finds that Plaintiff fails to allege that she engaged in a protected disclosure.

### B. Plaintiff sufficiently alleges an adverse employment action occurred.

Neither party disputes that an adverse employment action occurred. Plaintiff alleges that she was disciplined, placed on leave, and terminated. **Doc. 21 ¶¶ 10, 19, 27**. Thus, the Court finds that Plaintiff sufficiently alleges that an adverse employment action occurred.

The NMWPA defines a retaliatory action as "any discriminatory or adverse employment action against a public employee in the terms and conditions of public employment." NMSA 1978, § 10-16C-2(D) (2010).

Here, Plaintiff alleges she was written up for misconduct and eventually terminated. **Doc. 21 ¶¶ 25, 27**. Termination qualifies as an adverse employment action. *See Velasquez v. Regents of N. N.M. Coll.*, 2021-NMCA-007, ¶ 43, 484 P.3d 970 (treating removal from a position and termination as adverse employment actions). Thus, Plaintiff sufficiently alleges that she suffered an adverse employment action.

### C. Plaintiff fails to allege a causal connection.

Defendants contend that Plaintiff fails to allege that she experienced retaliation because she does not allege that she reported time fraud to them or a third party. **Doc. 24 at 5**. Plaintiff argues that her allegations lead to an inference of retaliation. **Doc. 27 at 2**. Since Plaintiff neither alleges that she engaged in a protected disclosure nor that that she was terminated due to her disclosure, the Court finds that Plaintiff fails to allege a causal connection.

To satisfy the third prong, a plaintiff must establish a causal connection between the protected action and the retaliatory action. *See Walton*, 113 F. Supp. 3d at 1201.

Plaintiff fails to sufficiently allege a causal connection for two reasons: First, she fails to sufficiently plead facts demonstrating that she engaged in a protected disclosure; and second, Plaintiff fails to allege facts demonstrating that she was terminated due to her decision to report time fraud. Plaintiff's only allegation that addresses causation is conclusory. She alleges that Defendants retaliated by placing her on leave, issuing false write-ups, disciplining her, and terminating her. **Doc. 21 ¶¶ 41, 44**. Plaintiff never alleges to whom she reported the time fraud. Thus, the Court cannot assume that Defendants had knowledge that she reported time fraud, and

the Court cannot assume her report contributed to her adverse employment actions. *See Lockheed Martin Corp. v. Admin. Rev. Bd., U.S. Dep't of Labor*, 717 F.3d 1121, 1129 (10th Cir. 2013) ("To establish a prima facie case . . . a complainant must show her protected activity was a contributing factor in the unfavorable personnel action.").

Moreover, Plaintiff's allegations do not create inferences that her reporting of time fraud contributed to her adverse employment actions. Plaintiff alleges her administrative leave was "based on incidents from July 24 and August 1, 2023." **Doc. 21 ¶ 9**. Plaintiff alleges HR began interviewing staff about time fraud in December 2023. *Id.* **¶ 21**. But she does not allege when Defendants first issued termination papers based on "inaccurate reports." *Id.* **¶ 14**. Plaintiff alleges she was terminated on October 22, 2024, "for misconduct." *Id.* **¶ 27**. The Court finds that none of Plaintiff's allegations, directly or by temporal proximity, demonstrate that her reporting of time fraud contributed to her adverse employment actions.

Accordingly, the Court dismisses Count IV with prejudice.

IV. **Plaintiff fails to sufficiently allege a promissory estoppel claim.**

In support of dismissing Plaintiff's promissory estoppel claim, Defendants argue that government entities are immune from promissory estoppel claims based on oral statements. **Doc. 24 at 5**. Plaintiff responds that she was made promises and mentions a written agreement. **Doc. 27 at 2**. But Plaintiff does not allege that a written agreement exists, rather she alleges that she was told that she was protected. **Doc. 21 ¶ 18**. Thus, the Court finds that Plaintiff fails to sufficiently allege a promissory estoppel claim.

The Supreme Court of New Mexico set forth the following elements of promissory estoppel:

> (1) An actual promise must have been made which in fact induced the promisee's action or forbearance; (2) [t]he promisee's reliance on the promise must have been

13

reasonable; (3) [t]he promisee's action or forbearance must have amounted to a substantial change in position; (4) [t]he promisee's action or forbearance must have been actually foreseen or reasonably foreseeable to the promisor when making the promise; and (5) enforcement of the promise is required to prevent injustice.

*Strata Prod. Co. v. Mercury Expl. Co.*, 1996-NMSC-016, ¶ 20, 121 N.M. 622, 916 P.2d 822.

Defendants contend, as a state entity, that they are immune from contract claims not based in a valid written contract. **Doc. 24 at 5–6**. Section 37-1-23(A) grants governmental entities immunity from actions based in contract unless the contract is valid and written. NMSA 1978, § 37-1-23 (1976). Section 37-1-23(A) applies to equitable claims "touching upon questions of contract law" which includes a promissory estoppel claim. *Quarrie v. N.M. Inst. of Mining & Tech.*, ¶ 9, 2021-NMCA-044, 495 P.3d 645.

Here, Plaintiff fails to allege a promissory estoppel claim. Plaintiff alleges that Defendants promised her job security and protection under internal policies and whistleblower laws, and that she "was told she was protected under the Whistleblower Act." **Doc. 21 ¶¶ 18, 45**. Plaintiff notes in her response that she "relied to her detriment on [a] written agreement," **doc. 27 at 2**, but a written agreement is never alleged in her SAC. Section 37-1-23 bars Plaintiff's promissory estoppel claim since she has not alleged the existence of a written contract. *See Davidson Oil Co. v. City of Albuquerque*, 545 F. Supp. 3d 1039, 1050–51 (D.N.M. 2021) ("[T]o the extent [Plaintiff] attempts to bring a promissory estoppel claim against [Defendant] based on an unwritten promise, [her] claim would fail."). Thus, as alleged, Section 37-1-23 bars Plaintiff's promissory estoppel claim. Therefore, the Court dismisses Count V with prejudice.

**V.   The Court declines to *sua sponte* grant leave to amend.**

Plaintiff never requested leave to amend, in her response or by a separate motion. In light of Plaintiff never requesting leave to amend and the Court having previously granted her leave to amend (**Doc. 22**), the Court declines to *sua sponte* grant leave to amend here.

Generally, a party must make a motion for leave to amend a complaint, and a district court is not required to offer leave to amend. Rule 7 requires a motion that (1) is in writing, (2) particularly states the "grounds for seeking the order," and (3) specifies the relief sought. Fed. R. Civ. P. 7(b)(1). Recognizing the importance of Rule 7, the Tenth Circuit has held that a court need not grant leave to amend when a party fails to file a formal motion. *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999); *see also Serna v. Denv. Police Dep't*, 58 F.4th 1167, 1172 (10th Cir. 2023) (holding that a district court properly denied leave to amend when a *pro se* plaintiff never "separately filed a motion with a proposed amended complaint").

Here, Plaintiff did not file a motion for leave to amend after receiving notice of potential deficiencies in the SAC. *See Bellmon*, 935 F.2d at 1109–10 (noting that a motion to dismiss provides a plaintiff notice and opportunity to amend their complaint). While the Court construes Plaintiff's pleadings liberally, she "nevertheless must follow the same rules of procedure that govern other litigants." *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992). Since Plaintiff has received notice and not filed a motion to amend her complaint, the Court declines to *sua sponte* offer leave to amend. *See Serna*, 58 F.4th at 1173 n.4 (finding that a plaintiff's *pro se* status does not require a *sua sponte* grant for leave to amend when a motion to dismiss is filed).

## CONCLUSION

In sum, Plaintiff fails to allege sufficient facts to support several of her claims. Therefore, the Court dismisses Count IV (Plaintiff's NMWPA claim) and Count V (Plaintiff's promissory estoppel claim) with prejudice. The Court declines to dismiss Counts I, II, (Plaintiff's Title VII claims) and III (Plaintiff's FMLA claim).

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (**Doc. 24**) is hereby **GRANTED in part** and **DENIED in part** for the reasons described in this Memorandum Opinion and Order.

                                                             /S/
                                           KEA W. RIGGS
                                           UNITED STATES DISTRICT JUDGE